Okay then, we're ready to begin. 20-5097 St. Francis Hospital v. Becerra. Counsel for Appellant, if you would make your appearance and proceed. Thank you. Good morning. May it please the Court. I'm Paul Mezina and I represent the hospitals in this case and I'm going to try to reserve three or four minutes for rebuttal. Your Honors, the government denied the hospital's reimbursement for about $12 million they spent training residents from 2001 through 2007 on the sole ground that the hospitals shared the cost of the residents off-site training. This was an arrangement that had been approved by the hospital's Medicare contractor. Counsel, let me ask you this before you really swing into it, excuse me for interrupting, but as I see the briefs and look at it you say 2001 through 2007. Does St. Francis in regards to 2007, do they actually make a claim in regards to that? And if so, tell me where that is. We do, Your Honor. Is it in the briefs that you raise that in your brief in chief? Your Honor, the arguments are the same for all years. The district court That's not my question, Counsel. My question is, have you raised specifically in regards to St. Francis 2007? I understand, Your Honor. I don't believe in our opening brief we specifically mentioned the 2007 year. I don't think that constitutes a waiver as to 2007 because all of the years were addressed together. There's no argument that 2007 should be treated differently than any of the other years. In fact, the I apologize for the oversight that we didn't specifically mention 2007, but I do think that it's unreasonable for the government to treat that as a waiver as to 2007. Everyone understands that the issues are the same across all the years. Now, one other question, Counsel. I apologize again for interrupting, but where is, do the hospitals, did they get the 12 million and have to give it back? Where's the status of the 12 million right now that we're arguing about? Where is that money? Your Honor, my understanding is that the money has been clawed back. I don't know actually at what point the transactions happened, but my understanding is that CMS recovered and the contractor recovered the 12 million dollars. Okay, thank you. Thank you, Your Honor. So as I was saying, there are two main reasons why we contend the Secretary's decision should be reversed. First, the Secretary's rule against hospital sharing costs was arbitrary and invalid under the law as it existed at the time these services were provided. The Secretary never offered any policy justification for the anti-sharing rule and he never submitted it for notice and comment. Instead, he said that his hands were tied because statute used the singular hospital, ignoring that under the Dictionary Act, singular normally includes the plural. Second, in 2010, in the Affordable Care Act, Congress amended the statute to reject the anti-sharing rule and it said in Section 5504C that the amendments would not require reopening for past years where no appeal was pending on this specific issue of medical education payments. The clear implication of that statement was that the amendments did require reopening where an appeal was pending and the Secretary's 2010 regulations actually recognized that implication both for this statute and for two other identically worded provisions of the ACA, but the Secretary ultimately refused to apply the amendments. Why do you say that with regard to Section 5505D and to explain the regulation that says this would require reopening except those cost reports as of 2010 where there's a jurisdictionally proper appeal? Well, the inverse of may not is may and so it seems to me that the Secretary was interpreting the mandatory provision under your view, 5505D, to specifically allow discretion on the part of the Secretary to reopen under 5505D. So it seems to me that the Secretary's interpretation of 5505D is consistent with the Secretary's interpretation of 5504C. Your Honor, I believe and I'm sorry I'm looking for the regulatory language I should have at handy, but I believe the language was that the provisions shall not be interpreted to require reopening. The statute. The statute, right. You're exactly right. I'm asking about the regulation interpreted by 5505D. And I apologize, Your Honor, but are you looking at a particular page of the brief? I'm trying to find the language. No, I don't think it's in the briefs. You had cited the regulation to make the point that you just made orally, Section 412.105F1 IIIC. And when I went and pulled that regulation, it seems to me that the regulation actually contradicts your argument because it seems to me that the Secretary in applying 5505D specifically recognized discretion in applying the reopening provision in 5505D. And your argument, as you just pointed out, is that the Secretary interpreted 5505D and 5506C to specifically require reopening. So, Your Honor, if you're referring to the 2010 regulation, I believe that regulation is best read as requiring reopening. And I think that's how the Secretary has read it. That's why the Secretary tried to amend it in 2014. And I believe the effect of these provisions may not be applied to require reopening except in a particular context. And the word except implies that the opposite rule implies the exception, meaning reopening is required. But I'll say, Your Honor, even if Your Honor disagrees with our reading of the regulation, I think ultimately our argument is based on the statute. We think the statute is clear regardless of what the regulation says. Well, wait, wait, counsel. Looking at the statute, the statute is only prospective and not retroactive. Isn't that correct? As to paragraphs A and B, that's right. There is a prospective effective date. Oh, no. Look at C. I'm talking about 5505C. I think that's where we got the argument. That is not retroactive. That is only prospective. Isn't that correct? No, Your Honor. Respectfully, I disagree with that. I think the implication of C, what C says is that reopening is not required and reopening as to past years is not required if no appeal is pending on this issue. I think the implication of that is that reopening of past years is required if an appeal is pending. And I think the government agrees if reopening is required, it has to be reopening to apply the new rules retroactively. Otherwise, it would be absurd. There'd be no reason to require reopening to apply the same old rules. Other statutes after that particularly make it retroactive. 5505C, I keep all these numbers. Anyway, the C does not say it's retroactive, whereas the other sections of the statute does specifically say it's retroactive. Isn't that right? So I think what you're referring to, Judge Baldock, is that 5505 and 5506 have retroactive effective dates, whereas A and B of 5504 have an effective date of July 2010, which makes them prospective in all cases. But we think that C of 5504 is best read as creating a narrow exception to that otherwise prospective effective date for this small category of cases where the hospitals had actually preserved this issue in an appeal that was pending at the time the statute was enacted. Counsel, excuse me. Again, with all these numbers and everything, I'm talking about 5504C, not 5505. I ask your forgiveness, because I'm confusing you with my confusion. But let's look at 5504C. That is not retroactive as I read that. Well, so, Your Honor, I respectfully disagree. I'm looking at 5504C, and what it says is, the amendments made by this section shall not be applied in a manner that requires reopening of any settled hospital cost reports, in other words, old hospital cost reports, as to which there is not a jurisdictionally proper appeal pending as of the date of enactment on this issue. So the negative implication that we think is clear from that statement is that the amendments do require reopening of settled hospital cost reports as to which there is a jurisdictionally proper appeal pending. And Your Honor, I'll give you an example. If Your Honor said to your clerks, business attire is not required on days when the court is not in session, I think you would have stopped. Well, if Your Honor made such a reckless statement, I think you would hope that your clerks would understand that the negative implication is business attire is required on court dates. And I think if a clerk said, I haven't been given any guidance from that statement as to what I should wear on court days, you would think that you would hire a particularly dense clerk. Another example, if a parent says to a child, if you finish your homework, you can might say, well, they didn't tell me if I don't finish my homework, I can't watch TV. And I can't assume that because that would be denying the antecedent. Respectfully, I think that's effectively the position the agency is taking here is that they're saying, well, Congress didn't speak explicitly to what happens if there is an appeal pending. But I think it would have made no sense at all for Congress to say what it did if it didn't intend that negative implication. And the of what this provision could be doing in the statute. You raise a very good point, counsel. But let me ask you about the reasonableness of your position. Now, we don't even have discretion over the denial of a motion to reopen because it's inherently discretionary. And you're not questioning, are you the inherent discretionary nature of a decision on behalf of the administrative agency to reopen or not reopen, right? As that's a background assumption, just as the background assumption in your analogy to Judge Baldock is that the background assumption is that his clerks are expected to wear business attire. And so one of the background assumptions that both you and opposing counsel have to address is that background assumption is that the decisions on whether to reopen a completed cost report is inherently discretionary, right? That's right, Your Honor. Let me make two points about that. First, I don't think that the background assumption changes the negative implication. So just to go back to my example, when I said, you know, if you finish your homework, you can watch TV. I think the implication of that statement is clear, regardless of what the default rule is about TV on the weekends or during the summer. And I think that's true of the business attire statement as well. Even if you had a judge who was known as lax with regard to dress, I think the implication be clear. The second point is, you know, the government's reading of this is that all Congress was trying to do is confirm this existing background discretion. And normally you don't go for a reading like that because it makes it superfluous. But here we have even more than that. If what Congress wanted to do was confirm the background rule, there would have been absolutely no reason for Congress to single out the one scenario where no appeal is pending on the issue, where there would be least likely to be any question about the application of a background rule. Congress could have confirmed the rule across the board by singling out the situation where no appeal was pending. I think it had to be implying that a different rule would apply when an appeal was pending. Your statutory arguments work. You have to counteract two background principles, right? I mean, not only the one as it relates to discretion, but also a presumption against retroactivity. And I'm struggling to see why that would be how you can overcome that. I mean, even if you are correct in your negative pregnant analogy or reference point for construing the statute, why does it mean that necessarily that you get the benefit of the standard that would otherwise be prospective? Sure, Your Honor. So let me address that. And then if I may, I'd like to reserve whatever time I've left for rebuttal. So the presumption against retroactivity, I want to make two points briefly about it. First is that I think it's very clear from Landgraf, even if the presumption can be invoked by governmental entities, it has most of its force in protecting private parties from unfair surprise. Here, the parties that are victims of unfair surprise are hospitals. For 15 years, we're told by their Medicare contractors every year that this cost sharing was appropriate. They didn't have to do it this way. They could have split up the cost and made them reimbursable if they had known that was required, but they didn't. Second point, I think it's also clear from Landgraf that the application of the canons of construction, including the rule against superfluity, comes in before the presumption. In other words, the clear indication of congressional intent necessary to overcome the presumption against retroactivity can come from reading the statute in light of traditional principles of construction, including the canons. And here, I think the presumption is overcome by those canons, including the rule against superfluity. And Your Honor, if I may, I'll reserve what I have left for rebuttal. Yes. May I proceed, Your Honor? Yes, please. Thank you, Your Honor. May it please the court. Kyle Edwards on behalf of HHS. In view of the discussion thus far, I want to touch on two points. The first relates to the ACA argument that the plaintiffs are making here. And that is that the Sixth Circuit in the Covenant case that we discussed in our brief has addressed precisely the same argument. So in that case, there was a provider that was trying to get retroactive benefit of the ACA's new cost-sharing standard for cost years 2002 to 2006 based on this language about reopening in 5504C. And the Sixth Circuit explained that Congress had spoken directly to the question of whether that hospital could get that benefit and said that the answer was no, because the plain effective dates in the statute make clear that the new cost-sharing standard only applies July 1st, 2010 going forward. And Congress explicitly maintained and did not modify the old single hospital requirement for pre-July 1, 2010 periods. Counselor, let me ask you this because it would help me understand. From 2010 on, the hospitals get their money, right? But so all we're really arguing about and what we have here is 2001 to 2006 or 07, depending on where we are with 07. So isn't that correct? That is correct. As long as they incur the cost of their own residence going forward, or if they share the cost, they have a written agreement going forward about how that works. Thank you. That is right. Edwards, let me ask you about Judge Sutton's analysis in the Covenant case. And let me just play devil's advocate with your reiteration of his analysis. It seems to me that the analysis in its cogent of Judge Sutton does support Mr. Mazina's argument that that would be an absurd state of affairs that in 5504C, Judge Sutton understands that there would be an obligation to reopen, but it would be a silly exercise in futility because the standard would have been under the 1986 statute. So it would be requiring reopening for a silly waste of time. And Mr. Mazina just elucidates the absurdity of a statutory regime as interpreted by Judge Sutton. What's your response to that? So I believe it was Judge Kethledge just interpreted. Yes, I'm sorry. Of course, no worries. So the response is that I guess there's a bit of a tail wagging the dog problem. I mean, our point is that the effective dates are so clear about which standard applies to which time period, that to the extent there is some confusion about what 5504C is doing, it should be read not to require reopening, because it would be strange to require reopening in a circumstance where there's no retroactive provision to apply. They obviously make the sort of inverse of that argument. But that's sort of what our take on that is. And of course, 5504C doesn't mandate reopening in any circumstance. It states an instance in which reopening is not required. And so, you know... But didn't Covenant sidestep the question of the initial question of whether the requirement existed for reopening by saying, even if that requirement existed, it wouldn't apply retroactively? Well, what I'm hearing you say is that, in some sense, it wouldn't make sense for us to do the finding that reopening was required, then consistent with what Mr. Messina said, is it your position that it would naturally follow that any reopening would have to allow for retroactive effect of the standard? It's not our position that, you know, if reopening is required, it must be to apply a retroactive standard. That is stated in the reply brief, but that is not the position we took. We believe that the Court can take the same approach that Sixth Circuit did in Covenant and, as you said, sort of sidestep the issue of what 5504C is precisely doing. And that's because, in order to get the relief that the hospitals are seeking, they need 5504C to do two things. They do. The first... Yes. Would there be any retro... Would there be any... Would it be futile or would there be any purpose for a required reopening if you couldn't apply the standard retroactively? I mean, any reason why one would reopen if you couldn't apply the standard retroactively? I don't believe so, Your Honor. Reopening is always discretionary. It's discretionary on the part of the Medicare contractor. But in terms of reopening for this particular purpose, I don't see why that would be something that would make sense. And that's why, you know, when you read 5504C, it doesn't actually mandate reopening. It just states an instance in which reopening is not required. Counsel, that confuses me even more. Is 5504C retroactive at all, period? No, Your Honor. Okay. Well, we seem to be dancing around. If it's not retroactive, I don't care how you read it, it can't be applied, period, right? It wouldn't be... It's either retroactive or it's not, as far as my humble opinion. So, which is it? I mean, it's not retroactive as to the standard that would be applied. Does that make sense, Your Honor? No, it does not. It's either applicable retroactively and can be applied retroactively under the Affordable Care Act, or the other provisions which specifically provide that they are retroactive. It doesn't make sense to me. Our position is it's not applicable here. It states an instance in which reopening is not required. It's not even listed. I mean, it doesn't even say so. How do you compare that with the other sections that do say that they're retroactive? That's right. 5505 and 5506 both create retroactive standards, and they include similar language about reopening. And as we've explained, and contrary to what my opposing counsel said earlier, the Secretary has never read those provisions about reopening to require reopening in any circumstance. If there's reopening in cases concerning 5505 and 5506, that's because they create substantively retroactive standards. For instance, 5505 says the standards it's going to be applicable going back to 1983. Here, the effective date is July 1, 2010. So there's just no there's no retroactive cost-sharing standard here. Congress explicitly maintained the old standard that requires a single hospital to incur all or substantially all of the costs of the off-site training program. Can you give me an example in this case where we would ever apply 5505, 5504C retroactively? You keep saying it's discretionary. In this case, it's not applicable, which leads me to believe that you think that there are cases that could come up where it could be applied retroactively. All I'm trying to do is pin you down. I want an answer. Either it can be applied retroactively, or it can't. We don't think it can be To go back to be clear, as you said, there are two things that they would have to succeed on, and reiterate those, please, to prevail on the statutory argument. To prevail, they would need to 5505C would have to be, 5504C would have to be construed to require reopening, which we don't think it does, and then also to mandate retroactive application of the new cost-sharing standard. And what the Sixth Circuit and Covenant said was, we don't really need to deal with the first assumption. The statute clearly refutes the second one, that Congress wanted this new cost-sharing standard to apply retroactively, and that's enough to foreclose plaintiff's claims for relief here. Counsel, I apologize, but to me, that was very important, what Judge Holmes just, can you repeat that again, please, so I can get my hands around it, as to those two things. Yes, so in order for the hospitals to get relief based on section 5504C, they need to, they need to establish that first, 5504C mandates reopening, so it requires the Secretary to reopen these old cost reports, and second, it requires them to establish that the purely prospective effective dates can actually be made retroactive, so they need both reopening of their cost reports and retroactive application of the new cost-sharing standard. And what the Sixth Circuit and Covenant said was, we're not going to take a position on the first assumption that they have to make, which is that reopening is required. What we can say is that the statute plainly refutes their argument that the cost-sharing standard can be applied retroactively due to the explicit effective dates, and for that reason, the Sixth Circuit rejected basically the identical argument that's being made here about the ACA. Can I shift just quickly to the, I'm sorry, Judge Baldock, were you finished? No, I just said thank you. Okay, let me shift quickly to the rulemaking, or the regulatory challenge, and the logical outgrowth argument, and looking at the notice that the rule would be a result in a final rule that involved a complete prohibition of the required reopenings and of retroactive application of cost-sharing standards. Well, as an initial matter, the 2010 rule was replaced by the 2014 rule, and as the Sixth Circuit and Covenant explained, that rule immediately superseded the 2010 rule, and plaintiffs here agree that the 2014 rule does not require reopening or retroactivity under any circumstance. So that was sufficient for the Sixth Circuit to say, you know, the regulations are consistent with the statute, which neither of which requires reopening and retroactive application. And so your argument is that by virtue of the 2014 rule, the logical outgrowth argument ceases to have any applicability at all that they've made? Yes, our position is that the 2014 rule replaced it to the extent there were any illogical outgrowth problems. The fact that there's a new rule that superseded the old one deals with it. If you are, I'm happy to address the logical outgrowth problem as well, independently. Yes, so the way in which the providers should have known that from the 2010 proposed rule that they couldn't get the relief that they're claiming here, is that the rule consistently stated that the effective dates for the new cost-sharing standard were July 1, 2010. What the 2010 rule was doing was explaining what this very similar, or in one case identical, language in 5504, 5505, and 5506 about a pending jurisdictionally proper appeal, what that language meant. It was trying to explain what Congress was intending by that language. The preamble to the 2010 proposed rule never states that reopening will be required. In the 2010 final rule, based on comments that were received about basically asking for what the hospitals are asking for here, asking that this provision be read to require reopening and retroactive application of the new substantive standard, the Secretary very plainly rejected that. It said reopening is not required under any circumstance. It's a discretionary procedure. Congress was not saying it was required. Also, as we said in the proposed rule, the substantive standard is clearly prospective only in effect. All right. Thanks. I have one follow-up question with Judge Holmes's exchange with you, Ms. Edwards. Mr. Mazzino's pointer to what you just said, at least a part of what you just said, is that the 2014 regulation would retroactively affect rights that had already in order to the benefit of the hospitals by virtue of his interpretation of the 2010 regulation. Now, the 2014 regulation is not subject to that criticism, as I understand it, that it was not enacted pursuant to notice and comment. The 2010 regulation, he does make that argument. If we assume arguendo that the 2010 regulation is a nullity, the final rule, because it did not go through notice and comment, I assume from your position that that would move the plainest argument that the 2014 regulation retroactively impaired the hospital's rights by virtue of his interpretation of the 2010 regulation. Is that correct? I believe so. Our position is that we care about the 2014 rules, the controlling regulation. There's no retroactivity problem in the way that the plaintiffs are talking about it, because the primary conduct at issue here... I'm just asking you to... I mean, I know that's your argument, and I don't mean to talk over you, but I'm just asking you, he does have an argument that the 2014 regulation is a retroactive impairment. You respond to that. I'm just wondering if we really have to address that from your perspective, because even if Mr. Mazzino is right, that the 2014 regulation does retroactively impair the hospital's rights as of the enactment of the regulation in 2010, if the 2010 is a final rule as a nullity, because it didn't go through notice and comment, I'm wondering if that would move, from your perspective, his criticism of the validity of the 2014 regulation. I believe that's right, Your Honor. Yes. I have one more question, if I might. Counsel, is the 2007 regulation, was it valid under the APA? Yes, Your Honor. 2007 now? 2007, yes. Yes, okay. Thank you. I'm going to give Mr. Mazzino a little bit of time so that I can follow up on this question. Tease out for me the mootness issue you just spoke about with Judge Bacharach. I'm talking to you, Ms. Edwards. Why, in fact, would it moot any concern regarding the retroactive effect of the 2014 regulation if, in fact, we deem the 2010 rule to be a nullity? My understanding of the idea is that because the 2010 rule would have been a nullity, there was no period in which there was a separate applicable standard under the regulation. All of this is, in our view, beside the point because the statute clearly states that reopening is not required. It clearly states that the substantive standard is only prospective in nature. Okay, well, then the nullity issue would be simply that there would have been no impairing of their rights based upon the effect of the 2010 rule. Correct. Okay. All right. That's clear. Thank you. Mr. Mazzino, you had 37 seconds. We'll add one minute to that, please, and please feel free to proceed. Thank you, Your Honor. I'll try to make, I think, three points with some alacrity. First, on the mootness issue you were just discussing, our position is not that the 2010 regulation is a nullity. The 2010 regulation is a nullity and its plain language supports us. Our position is that if the regulation were interpreted the way the Secretary now interprets it, that interpretation would not have gone through notice in Congress. Second, about the Covenant case, I want to be clear, and I think this came out in the argument, the approach the Sixth Circuit took in that decision, which is unpublished and is not even precedential in the Sixth Circuit, is very different from the approach that the government took, at least in its brief, in this case. As my friend Ms. Edwards acknowledged, the Sixth Circuit didn't decide if reopening was required. It's just to apply the old standards. I think, and I thought the government agreed in its brief, although it disagrees today, I thought we agreed that that's absurd. I think it clearly is absurd. If reopening is required, it has to be for the purpose of applying the new standards. So I think the question presented squarely that the Sixth Circuit elided in Covenant whether the statute is best read to require reopening. Let me follow up on that briefly, and if we need to give you a few more minutes to make your third point, we will. Well, why wouldn't the rationale still be able to work? In other words, there are two prongs to your statutory argument to win, quite apart from the question of whether there's required reopening. If it is absolutely clear that you could not get retroactive effect of this statute, why isn't that full stop into it? I mean, why doesn't the other argument even matter? Your Honor, I think it comes down to the canon of the specific governing the general. So if you have, and let's take off the table the question of whether reopening is required. Let's suppose that this statute said expressly, as we think it says implicitly, reopening is required if an appeal was pending. Then I think you'd have to say the implication of that is that it's creating a specific exception to the more generally applicable effective dates in A and B, because it just would make no sense to require reopening to apply the same old law. That would be a pointless exercise. Third point, quickly. Thank you, Your Honor. So just very briefly, I just want to come back. I don't want to lose sight of the state of the law before 2010, and the fact that the Secretary has never put forward any rationale why Congress would have wanted to prohibit cost sharing between hospitals. This is a rule that would require every hospital to set up its own separate training program that produces inefficiency, duplication of cost, makes care and training more expensive, hurts patients and the public. Secretary never said this is a policy that makes sense. He said this is required by the language of the statute. And we know from this court and the DC Circuit, if an agency wrongly thinks the statute requires a result, they don't get any Chevron deference. All right. Thank you. Any other questions from the panel? I don't have a question. I have an editorial comment. Okay, give it. I thought the briefs for both of you and the advocacy today were just top notch, and I appreciate the quality of the arguments. Can I say something? Yes, of course. To both counsel, it really helped me a lot in regards to this, much more so than the briefs I got a different little bit from Judge Bacarachas to the quality of the briefs. Thank you. Well, thank you very much. I appreciate it, counsel. Case is submitted.